# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 4681 | DATE | 3/15/2001 |
| CASE TITLE | David Smith vs. City of Chicago | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment is granted. Judgment entered in favor of defendant City of Chicago and against plaintiff David Smith. Enter Memorandum Opinion and Order.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 2 1 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MD | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 98 C 4681 |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

DOCKETED MAR 21 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff's second amended complaint alleges that defendant City of Chicago ("the City") discriminated against him based on his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiff "alleges that his supervisor, Mark Gyrion, discriminated against him by harassing him, excessively criticizing him, and threatening him with termination. [Plaintiff] complains that beginning in or about October 1995, the City of Chicago engaged in a continuing violation of race discrimination, and racial harassment against him." *Smith* v. *City of Chicago*, No. 98-4681, 1999 WL 1000517, at *1 (N.D. Ill. Oct. 26, 1999). Judge Gottschall, the district court judge previously presiding over this case, denied the City's motion to dismiss the complaint on October 26, 1999. *See id.* Presently, the City moves for summary judgment. For the reasons articulated below, the court grants the defendant's motion.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The

party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS[1]

Plaintiff, an African-American male, has been employed by the City since 1975 and is presently working as a motor truck driver ("MTD") foreman in the City's Department of Water. Mark Gyrion is the Superintendent of Garages in the Water Department and exercises supervisory authority over plaintiff. In August 1995, plaintiff received and initialed a grievance from one his drivers, Godfried Ravelingen. Plaintiff also answered the grievance despite the fact that a foreman is only supposed to initial the grievance and then forward it on to Gyrion. No other MTD foreman has ever answered a grievance.

---

[1] The court notes that despite being granted an extension of time to file a response to defendant's motion, plaintiff failed to file such response or in any way respond to defendant's statement of material of facts submitted in support of defendant's motion as required by Local Rule 56.1. As such, defendant's motion is unopposed. The facts stated in defendant's 56.1 statement, to the extent they are properly supported, will therefore be deemed admitted by plaintiff. *See* Loc. R. 56.1(b)(3)(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). *See also Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000); *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000).

In October 1995, plaintiff requested and was granted a vacation day. Plaintiff never informed any of his supervisors that the reason he requested the vacation day was to attend the Million Man March on October 16, 1995. On October 17, 1995, plaintiff received a notice of suspension stating that he would be suspended for one day due to insubordination. At this time, Plaintiff believed that the real reason for his suspension was plaintiff's race. On September 17, 1996, an appeal hearing was held on plaintiff's suspension and the grievance incident was discussed at this hearing. On September 20, 1996, plaintiff's suspension was sustained. The memorandum notifying plaintiff that his suspension was sustained states that the commissioner handling the appeal found questionable plaintiff's contention that he did not know the proper grievance procedure since he had properly handled grievances in the past.

Also in October 1995, plaintiff received a memorandum stating that two mandatory meetings would be held regarding safety matters. Plaintiff only went to one of the meetings and never informed anyone that he would not attend the other meeting. Plaintiff received verbal counseling for not attending the safety meetings. At the time he received the counseling, Plaintiff believed the he was being disciplined because of his race. Moreover, in February 1996, plaintiff believed that his right to assign overtime was removed because of his race.

Since 1995, plaintiff has felt that he has been given less overtime because he is African-American, and plaintiff filed two grievances regarding his not being called to work overtime in November 1995 and June 1996. Plaintiff does not recall whether anyone did or said anything to indicate that he was not given overtime on account of his race, but he does believe that it has become a regular routine that he is not called for overtime because of his race. Gyrion testified at his deposition that on more than two but less than five occasions Gyrion assigned, but plaintiff

3

declined, to work overtime.

In November 1996, plaintiff was verbally counseled for failing to take a truck to preventive maintenance. Plaintiff believes that this discipline "is just in retaliation against me, continued retaliation against me because of my complaint." (Def.'s Ex. A at 392.)

In January 1997, plaintiff was scheduled to receive a "helper" to assist with additional duties required by the cold winter weather. The assigned "helper" did not report to work but plaintiff had some of the truck drivers at his garage help him.[2] Plaintiff believes that had he been Caucasian, he would have had a "helper." Plaintiff admitted that he suffered no negative consequences because the work that should have been completed by the helper was left undone.[3] Plaintiff also received two performance evaluations in 1997 with reduced scores from the pervious year. Plaintiff refused to sign the evaluations but did not file a grievance.

Plaintiff filed an EEOC charge against the City on March 5, 1997. The EEOC charge

---

[2] At his deposition, plaintiff testified as follows regarding the assigned helper:

A.  Well, they had help – a helper to send me, but something happened to the helper. So he told me the helper didn't show up. Like always, sometimes people stay home when it get[s] cold, or they get sick, things like that. But he was there, he was scheduled there, but he never did materialize. But he was on the -- on the list.
Q.  So there was a helper scheduled for you.
A.  Right.

(Def.'s Ex. A at 170-71.)

[3] The following exchange occurred at plaintiff's deposition:

Q.  Well, did you suffer any kind of negative consequence because of the work that would have been done by a helper was left undone?
A.  No.
Q.  Okay.
A.  Because I made up for it.
Q.  You made up for it by that 20 percent you did?
A.  Yes.

(Def.'s Ex. A at 180.)

lists the November 1996 verbal counseling and the denial of a helper in January 1997 as examples of discrimination. The charge additionally states that "[o]n or about Friday January 10, 1997 [plaintiff] was called for work when [his] duty is the South District for weekend Truck Drivers; and on or about same date the Superintendent of Motor Truck Driver Garages requested a Truck Driver to schedule overtime for January 11 and January 12, 1997."

In February 1998, plaintiff complained that one of his trucks was emitting dangerous fumes. This was not the first time he complained about this truck. Although plaintiff did not drive the truck, he suffered 3 headaches as a result of checking the truck. Plaintiff believes that Gyrion compelled him to assign a driver to the truck that was emitting the dangerous fumes. Plaintiff claims he was verbally abused and threatened with job loss as a result of his handling of the truck, and further contends that the abuse and threat was based on the fact that plaintiff is African-American.

## DISCUSSION

A plaintiff may only bring a claim under Title VII if the claim is based on events that occurred within 300 days of the plaintiff filing an EEO complaint. *See* 42 U.S.C. § 2000e-5 (Title VII); *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999) ("Under Title VII, a plaintiff has 300 days from the occurrence of an allegedly discriminatory act in which to file a timely charge . . . ."). As such, alleged discriminatory acts that occurred before May 12, 1996 are time-barred unless plaintiff can show that he is entitled to application of the "continuing violation doctrine," which allows plaintiffs to sue for discriminatory acts occurring before the 300 day period when the acts are part of a policy or pattern of continuing discrimination and "it would be unreasonable to expect the plaintiff to perceive offensive conduct as Title VII

harassment before the limitations period runs, or the earlier discrimination may only be recognized as actionable in light of events that occurred later, within the period of the statute of limitations." *Hardin*, 167 F.3d at 344. Plaintiff admits that he believed at the time he received the discipline in 1995 (the one-day suspension and verbal counseling) that such discipline was based on his race. In addition, plaintiff admits that in February 1996, he believed that the City removed his right to assign overtime based on his race. Plaintiff, therefore, perceived the alleged offensive conduct as violative of Title VII 300 days prior to the filing of his EEOC complaint. For this reason, plaintiff's claims of discrimination based on the October 1995 one day suspension, the October 1995 verbal discipline, and the February 1996 removal of his right to assign overtime are time-barred and will be disregarded by the court.

With regard to the remaining allegations, plaintiff presents no direct evidence of discrimination and, therefore, must rely on the burden-shifting method of proving discrimination set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).[4] As recently reiterated by the Seventh Circuit in *Malaca* v. *City of Madison*, the *McDonnell Douglas* framework provides that a plaintiff must first establish a prima facie case of discrimination. 224 F.3d 727, 729 (7th Cir. 2000).[5] In order to set forth a prima facie case under Title VII plaintiff must show that (1) he is a member of a protected class, (2) he was meeting his employer's legitimate performance expectations, (3) he suffered an adverse employment action, and (4) he was treated less favorably

---

[4]Direct evidence of discrimination "is evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *Walker* v. *Glickman*, ___ F.3d ___, No. 00-1978, 2001 WL 194510 (7th Cir. Feb. 27, 2001) (internal quotation marks and citation omitted).

[5]Once plaintiff has proven his prima facie case, the burden of production then shifts to plaintiff's employer to articulate a nondiscriminatory reason for its employment decision, but the burden of persuasion always remains with the plaintiff. *Id.* If the employer articulates such a non-discriminatory reason, the burden then shifts back the plaintiff to establish that the employer's stated reason is pre-textual and that a discriminatory reason actually formed the basis for the employer's actions. *Id.*

than similarly situated persons outside of his protected class. *See Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000).

Defendants argue that plaintiff has failed to establish the second, third, and fourth elements of his prima facie case. While it is true that plaintiff has been disciplined during his employment with the City, because the prima facie burden on plaintiff is low and since plaintiff has been employed with the City since 1975, the court will assume that element two is established for purposes of this motion. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (plaintiff's burden of proving a prima facie case "is not onerous"); *Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000) ("The plaintiff's evidence on the prima facie case need not be overwhelming or even destined to prevail; rather, the plaintiff need present only 'some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion.'"). Plaintiff, however, cannot meet even his low prima facie burden with regard to elements three and four.

The Seventh Circuit explained in *Stockett*,

> An adverse employment action is a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities. Adverse employment actions encompass more than simply the termination of employment or a decrease in salary. They also may include actions such as bestowing on an employee a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. It is well established that conditions of employment that are designed to harass and humiliate employees because of their race are actionable adverse employment actions under Title VII.

221 F.3d at 1001 (citations, internal quotation marks, and alterations omitted). The evidence, viewed in the light most favorable to plaintiff, fails to establish that plaintiff suffered an adverse employment action. Although plaintiff claims he was denied overtime, there is no evidence that

7

plaintiff materially lost benefits, and there is uncontroverted evidence that plaintiff declined to work overtime on more than two occasions. With regard to the "helper" incident, plaintiff admits he suffered no adverse consequences, and there is no evidence that plaintiff's performance evaluations affected his job at all. The discipline plaintiff received also cannot be viewed as an adverse employment action according to the standards set forth above. Moreover, the court cannot reasonably infer from the evidence presented that any or all of the City's actions were designed to harass or humiliate plaintiff.

As for the fourth element, plaintiff claims that a similarly situated white employee received a helper in January 1997 but admits that he had been assigned a helper who, for an unknown reason, did not show up for the job. Regarding plaintiff's other allegations, no evidence has been presented that similarly situated non-African-American employees received better performance ratings or would not have been disciplined for the conduct for which plaintiff was disciplined or were given more overtime. In fact, with regard to overtime assignments, plaintiff's deposition testimony evidences that Caucasians were similarly upset about not being called for overtime.[6]

## CONCLUSION

In sum, plaintiff failed to present evidence of a prima facie case of discrimination under Title VII. (Indeed, plaintiff failed to present any evidence at all.) For this reason, the court grants defendant's motion for summary judgment [#30].

Date: March 15, 2001      Enter: _____
                                 JOAN HUMPHREY LEFKOW
                                 United States District Judge

---

[6] At his deposition, plaintiff was asked to describe the employees listed on an Employee Problems Form as improperly ignored for overtime and admitted that two were Caucasian.

8